## 10370

### BLACKMON *ET AL.* v. BLACKMON.

#### (101 S. E. 827.)

1. EXECUTORS AND ADMINISTRATORS—DIRECTIONS FOR DIVISION GIVE IMPLIED POWER TO SELL PERSONALTY.—A will providing for the division of personal property in certain proportions *held* by necessary implication to direct the sale by the executor of the personal property, so that an order of sale from the probate Court will not be necessary, under Civ. Code 1912, sec. 3689.

2. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD NOT GERMANE co ISSUES, IN ACTION BY LEGATEES TO COMPEL PAYMENT OF LEGACIES.—In an action by legatees against an executor, where complaint alleged that executor had converted into cash the real estate directed by the will to be sold, and prayed that the money be paid to the legatees, evidence that land so sold did not bring full value at the sale, but that the lands were bought by the executor himself at a price less than the real value, was not germane, and should not have been admitted; no such issue being raised by the pleadings.

3. EXECUTORS AND ADMINISTRATORS—FACT THAT LAND SUBSEQUENTLY BROUGHT HIGHER PRICE DID NOT INVALIDATE SALE.—The fact that lands sold by an executor might have brought a higher price, if the sale had been made at a later date, cannot affect the validity of a sale made for a full and fair price at the time, after due advertisement and upon competitive bidding, by parties who knew the values at the time, and who could do nothing more than conjecture on the question as to whether the value of such lands would rise or fall in what was then the uncertain future.

4. EXECUTORS AND ADMINISTRATORS—EXECUTOR MAY PURCHASE LAND AT SALE AND PROFIT AT RESALE.—Where an executor pays a full and fair price at a sale of land of the estate, where there was competitive bidding and no evidence to warrant that any advantage was taken or profit acquired by the executor by and through any use or abuse of his trust, such executor cannot be held liable to the estate, for the price realized at a subsequent resale, when by the course of events the property had increased in value.

5. EXECUTORS AND ADMINISTRATORS—NOT ENTITLED TO COMMISSION ON FAILURE TO MAKE ANNUAL RETURNS UNTIL FULL SETTLEMENT IS MADE.—An executor is not entitled to commissions for his trouble in the management of an estate, where he failed to make annual returns, under Civ. Code 1912, sec. 3648; but such failure will not prevent him from receiving and retaining his commissions allowed by law upon the payment over to the parties entitled thereto of any balance in his hands.

6. Executors and Administrators—Executor Improperly Retained Moneys on Account of Claim of Third Person Against Land Transferred by Decedent Under Warranty of a Title.—The mere asserting of a claim of title by a third person to a small interest in land conveyed by testator under a warranty title, no action upon such claim ever having been taken, does not warrant executor retaining in his hands money of the estate due legatees; it being problematical whether any liability will ever be shown to exist, or whether the estate of the testator will ever be called upon to respond in damages for any alleged breach of warranty.

Before Moore, J., Lancaster, at chambers, August 31, 1919.    Affirmed.

Action by Sarah F. T. Blackmon and others against J. J. Blackmon, as executor of the will of M. A. Blackmon, deceased.    Judgment for defendant, and plaintiffs appeal.

The will of Minton A. Blackmon is as follows:

State of South Carolina, County of Lancaster.    I, Minton Amos Blackmon, being of sound mind and disposing memory, do make, ordain, publish and declare this to be my last will and testament; hereby revoking all others.

Item 1. I will and direct that all of my just debts be paid immediately after my death and that a sufficient sum of money taken from my estate to erect over my grave a suitable monument.

Item 2. I give, devise and bequeath to my beloved wife, Sarah Frances Ferguson Blackmon, for her natural life, or during her widowhood, the following tracts of land: My Will Hinson bottom situated on Flat Creek, containing 10 acres; my Stogner place, containing sixty-nine (69) acres, my home place, containing twelve (12) acres; my tract of land near Antioch Church, containing 39 acres; my tract of land on Rocky Creek Road, containing 120 acres, and my Finley place on Gills Creek, containing 103 acres, and also 13 acres, more or less.

Item 3. In the event of my wife's death or marriage, I give, devise and bequeath the Stogner place named in the 2d item to my nephew, Will H. Blackmon, my home place to

my niece, Leila Walker, provided that she shall pay to her brother, Thomas, the sum of $200; my Antioch place to my nephew, Mat Blackmon, provided that he pay to Joel Blackmon the sum of $200; my Rocky River place, named in item 2, to Olivia Howard, Virginia Dabney and Delia Kell, one-third each. My Finley place, named in item 2, to W. T. Griffin, Will Small, Yancy Griffin and C. C. Small, one-fourth each. My Will Hinson bottoms, named in item 2, to Amanda Baskins her lifetime, and at her death to Mint Baskins, son of Dock Baskins.

Item 4. At my death I will and direct my old home place on Flat Creek, containing 200 acres, more or less, be sold and the proceeds therefrom, after the payment of my debts, be added to my other personal estate.

Item 5. I give, devise and bequeath the following sums of money:

E. L. Stogner, $500; H. L. Blackmon, $400; Mint Faile, $400; Henry Blackmon, $200; Jim Blackmon, $200; Lum Ellis, $100; Ivy Minton McCown, $100; M. D. Blackmon's daughters, each $100; Lizzie Snipes, $100.

Item 6. To my beloved wife, I give, devise and bequeath all my household and kitchen furniture, and one-half of my personal estate, after the payment of my debts and bequeaths in item 5. The remaining one-half to be divided, share and share alike, between the children of R. E. Small, Minor Blackmon, Will Faile, Charlie Mungo and James Griffin.

Item 7. In the event of the death of any beneficiary under this will before my death I give, bequeath and devise the amount herein provided such beneficiary to his or her next of kin.

Item 8. I nominate, constitute and appoint J. J. Blackmon executor of this my last will and testament, and should he predecease me, I nominate, constitute and appoint in his stead Joel D. Blackmon executor of this my last will and testament. (Duly executed May 16, 1916.)

The following is the decree of the Circuit Judge:

This is an action by the plaintiffs above named, suing in their own right and also claiming to sue in behalf of "all other legatees under the will of M. A. Blackmon" against the defendant, John J. Blackmon, as executor of the will of M. A. Blackmon, seeking to compel the assent to and payment by the defendant of the legacies given by the last will and testament of M. A. Blackmon, the payment whereof is alleged by the plaintiffs is wrongfully withheld and refused by the executor. The plaintiffs allege that the defendant, as executor, has discharged and liquidated all the liabilities of the estate, that all of the assets of the estate have been marshaled and converted into cash, and that the executor has in his hands the funds of the estate with which to pay the several legacies bequeathed by the will, but that, although the plaintiffs and other legatees have made repeated demands for the payment of the legacies, the defendant has hitherto failed and refused to pay the same. The plaintiffs thereupon pray for an accounting by the executor for the moneys which have come into his hands belonging to the estate, and that the executor be required to pay over to the legatees under the will of M. A. Blackmon, deceased, the several legacies therein bequeathed, and that such other and further relief may be granted as to the Court shall seem meet.

The defendant by answer alleges that after the death of M. A. Blackmon, having duly qualified as executor, he paid all the debts of the estate and all specific bequeaths under the will, but alleges that he has not paid the legacies to plaintiffs and others, for the reason that there is an outstanding contingent liability of the estate arising from a warranty by his testator in his lifetime in a conveyance of certain lands, to which lands a third party has set up some claim of title against the testator's grantee in possession and that such grantee has given notice to the defendant of such claim.

Upon these issues an order of reference to take the testimony was made, the testimony has been taken, and the cause came on to be heard by consent at chambers upon the

31—S. C. 113

evidence so reported. With reference to issues arising upon the evidence so taken, various questions were argued before me and are now for determination.

The position taken by the plaintiffs with reference to the claimed invalidity of the sale of the personal property of the estate, in the absence of an order of sale from the probate Court for such sale, cannot be sustained under the provisions of section 3689 of the Civil Code, which expressly allows the sale to be made without such order, where the sale is directed by the will. Construing the will as a whole, it is considered by necessary implication directing the sale by the executor of the personal property, as well as the real estate therein ·ordered by testator in express terms to be sold by the executor. The sale of the property was duly advertised and the prices realized seem to have been fair and adequate.

With reference to the contention over the payment by the executor of the fertilizer account for $600 due to the Virginia-Carolina Chemical Company, it appears from the verification of this claim that the executor was the agent of the Chemical Company, making the sale of the fertilizer to the deceased in his lifetime, and there is no evidence whatever in the case to throw suspicion upon this account as a valid and previously unpaid claim against the estate of the deceased. Under the circumstances the payment was a proper disbursement by the executor who had a personal knowledge of the correctness of the account and that it was due by the estate of his testator.

Notwithstanding the objection by the defendant that no such issue was made by the pleadings, but that, on the contrary, the complaint alleged that the executor had already converted into cash the real estate directed by the will to be sold, the plaintiff insisted on tendering before the referee, certain· testimony offered for the purpose of endeavoring to show that the lands did not bring full value at the sale by the executor, but that the said lands

were bought by the executor himself at a price less than the real value. It appears that no such issue was raised by the pleadings, and no motion for an amendment of the complaint in this particular has ever been made, and, therefore, the evidence upon the point in question was not germane to any issue in the cause, consequently this evidence should have been excluded.

However, if this evidence should now be considered, the conclusion has been reached upon the entire evidence in the cause that the sale of the lands was made for a full and fair price, at the time of the sale, in accordance with the direction of the will, and after due advertisement as therein required. The fact, if it be a fact, that the lands might have brought a higher price, if the sale had been made at a later date, cannot affect the validity of this sale, which was made for a full and fair price at the time, after due advertisement, and upon competitive bidding, by parties who knew the values at the time, and who could do nothing more than conjecture upon the question as to whether the value of such lands would rise or fall in what was then the uncertain future. For these reasons, the contention of the plaintiffs that the defendant should be held to account for a higher price than that which was realized at the sale made in compliance with the requirements of the will must be overruled. The sale being duly advertised, being fairly conducted, being attended by those interested, and the prices brought being shown by the evidence of disinterested witnesses to have been full and fair prices for the land at that time, the sale must be upheld, notwithstanding the executor may have made a profit on the resale by him at later dates. The price paid being full and fair price, upon a competitive bidding, and there being no evidence to warrant that any advantage was taken or profit acquired by the executor by and through any use or abuse of his trust position, and a purchase having been at figures which the evidence of competent and disinterested persons shows was full and fair

value at the time, the purchaser cannot be held liable for the price realized at a subsequent resale, when by the course of events the property had increased in value. Persons knowing the value of the lands attended the sale, and doubtless would have bought the lands at a higher price than was paid at that time, if it could have been foreseen that the march of events would increase the value at a period in the near future when a profit could be realized on a resale. Taking chances on such a future increase in value, the purchaser who did buy at a fair and full price on the sale, even though he be the executor making the sale, cannot be held liable for the increased value, which by good fortune he subsequently realized.

The contention of the plaintiffs that the defendant is not entitled to commission for his trouble in the management of this estate, by reason of the fact that he failed to make annual returns, must be sustained. The statute so provides as to the years in which he failed to make annual returns as executor. Civil Code, section 3648. This will not prevent the defendant, however, from receiving and retaining his commissions allowed by law upon the payment over to the parties entitled thereto of any balance in his hands. *Epperson v. Jackson,* 83 S. C. 157, 65 S. E. 217.

It appears from the evidence that there has been no eviction by title paramount of the purchaser of the lands or his grantee claiming under the warranty title therefor executed by the testator in his lifetime, but that a mere claim of title has been asserted by a third party to some small interest therein, and that no action upon such claim of title has been taken. Hence it follows that no liability of the estate of M. A. Blackmon on account of such warranty now exists, and it is problematical whether any such liability will ever be shown to exist, or whether the estate of M. A. Blackmon will ever be called upon to respond in damages for any alleged breach of warranty. Under the

conditions thus shown to exist, the claim to such liability is entirely contingent and uncertain, and the existence of this possible and contingent liability can furnish no ground for delay in disbursing the funds of the estate.

It is, therefore, ordered that the defendant do forthwith notify the parties entitled thereto of his readiness to disburse the funds now in his hands, in accordance with the terms of the will, and that, upon the execution and delivery to him of a proper receipt therefor, that he do pay to each of said parties, or to their attorney, the amount to which each of said legatees is entitled under the terms of the will. In case any question arises as to the amount to which any such party is entitled, any party to this action shall have leave to apply at the foot of this decree for an order to ascertain the same by reference, or otherwise. Upon failure to give notice and make payment as acquired by this decree, the defendant shall be chargeable with interest on the sums due in accordance herewith for and during such delay.

Let the costs and disbursements of this action be paid out of the estate, and let any party have leave to apply at the foot of this decree, upon due notice, for any order necessary to carry the same into effect.

*Mr. J. Harry Foster,* for appellants, submits: *That while an executor may buy at his own sale, he must account for the actual value of the property:* Code 1912, vol. I, sec. 3687. *The executor should pay interest on annual balances:* 83 S. C. 157; 57 S. C. 36; 20 S. C. 7; 28 S. C. 582. *The executor had no implied power to sell the personal property of the estate under the will and could only do so by order of the probate Court:* Code of 1912, sec. 3689; 83 S. C. 157. *The appraisement is prima facie the correct value of the estate:* Code of 1912, section 3689; 83 S. C. 157; 27 S. C. 332; Code of 1912, section 3627. *It was error to allow disbursements not properly supported by proof that they were valid debts against the estate of M. A. Blackmon:* 45

S. C. 408; 41 S. C. 458; 2 McC. 196; 2 McC. 7.   *The etsate is not liable for goods sold and delivered after the death of testator, and in the absence of some property authority for making this liability:* 108 S. C. 306; 36 S. C. 118; 109 S. C. 225; 69 S. C. 386.   *Disbursements can only be sustained when supported by a proper voucher:* 93 S. C. 525.

*Mr. R. S. Stewart,* for respondent, submits: *Testimony concerning the value of the lands sold by the executor under item 4 of the will was irrelevant and not in response to the allegations of the complaint and should have been excluded:* 81 S. C. 566.   *An executor may become a purchaser at the sale of his testator under whatsoever authority the sale may be made, provided the property shall be sold for the actual value at the time of said sale:* Civil Code, section 3687; 37 S. C. 124.   *Not knowing how much the indebtedness against the estate was, the executor could not tell what part would go to the widow and what part to the special beneficiaries, and his refusal to pay over the money, was proper, and he cannot be charged with interest on the annual balance:* 83 S. C. 157.   *An order from the probate Judge for the sale of personalty is not necessary where the will directs that the personal property be sold:* Civil Code, sec. 3689.

January 27, 1920.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Moore, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE GAGE concur.

MR. JUSTICE HYDRICK, *dissenting.*   I think the preponderance of the evidence shows that the executor bought the land for less than its true value, and he should be required to account for the true value.   I think, too, that the exceptions complaining of error in allowing the executor credit for

certain items which were not properly proved against the estate, and for payment of which he produced neither proof nor proper vouchers, should be sustained.

MR. JUSTICE FRASER concurs with Mr. Justice Hydrick.