**ROSS et al. v. BEACHAM et al.**
**No. 40.**

District Court, W. D. South Carolina,
Greenville Division.
May 18, 1940.

Beacham individually and as administrator of the Estate of W. G. Ross, deceased, and his surety for loss caused by his failure to make undistributed annual balances productive, the payment of excessive bond premiums, and for refund of commissions unlawfully received by him in the management of the estate. The defendants deny the allegations of negligence and improper management and plead a judgment in the case of W. C. Beacham, as Administrator, etc., et al., v. W. Rushton Ross, as Executor, etc., et al., 187 S.C. 398, 197 S.E. 369, as a bar to the claim of the plaintiffs for interest on undistributed annual balances, which the administrator failed to make productive.

Where diversity of citizenship exists and the requisite amount is in controversy, the Supreme Court has sustained the right of Federal Courts of Chancery to exercise original jurisdiction in favor of creditors, legatees and heirs to establish their claims and have a proper execution of the trust as to them. The only qualification in the application of this principle is that the courts of the United States in the exercise of their jurisdiction over the parties cannot seize or control property while in the custody of a court of the state. This exception does not apply in the instant case. Diversity of citizenship and jurisdictional amount are present in this case, and this court has jurisdiction of the controversy. Sutton v. English, 246 U.S. 199, 38 S.Ct. 254, 62 L.Ed. 664; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Borer v. Chapman, 119 U.S. 587, 7 S.Ct. 342, 30 L. Ed. 532; Dixon, as Receiver, etc., v. Cleveland, as Executrix, etc., D.C.S.C., 31 F. Supp. 1010.

There is not much dispute about the facts. W. G. Ross died intestate on August 20, 1926 The defendant Beacham qualified as administrator of the estate on October 6, 1926. His bond was fixed at $25,000 with the defendant American Surety Company of New York as surety. On October 12, 1931, by order of the court, the bond was reduced to $12,000. In the statement of receipts and disbursements introduced in evidence it appears that the administrator after making some disbursements to the heirs at law of the deceased during the year 1927, had remaining cash on hand December 31, 1927, $7,933.21. During the years 1928, 1929, 1930, 1932,

R. N. Ward, of Greenville, S. C., for plaintiffs.

R. E. Babb, of Laurens, S. C., and Blythe & Bonham, of Greenville, S. C., for defendants.

WYCHE, District Judge.

Plaintiffs bring this action for an accounting and seek judgment against W. C.

1933, 1934, 1935, 1936 and 1938, he made no disbursements to the heirs and had remaining cash on hand December 31, 1928, $6,717.78; December 31, 1929, $6,527.16; December 31, 1930, $6,506.34; December 31, 1932, $6,896.31; December 31, 1933, $7,050.98; December 31, 1934, $6,939.39; December 31, 1935, $8,679.54; December 31, 1936, $8,724.70; and December 31, 1938, $1,163.36. In 1931, after having received from the Estate of Mary R. Chipley the sum of $2,500, he distributed approximately this amount to the heirs in the instant case and still had on hand December 31, 1931, $6,850.44. In 1937, he made a distribution to the heirs and had remaining on December 31, 1937, cash in the amount of $1,194.03. These annual balances were held by the defendant Beacham on deposit, without being made productive, in the general account of the Peoples National Bank of Greenville, South Carolina, of which he was president, a director and a stockholder. The defendant Beacham is a man of the highest character and long business experience. He testified his bank was lending money "regularly all along" and that he might have loaned the funds in question. During the period of time he kept these annual balances deposited therein, his bank was paying to saving account depositors interest at the rate of four per cent. per annum. Continued and repeated requests and demands during the years of his management of the estate were made by the heirs and their attorneys to the defendant Beacham to make settlement and distributon. His attorney at Laurens, South Carolina, was notified many times that the heirs were anxious for settlement. On February 10, 1931, the defendant Beacham wrote W. R. Ross that "under present conditions" it was impossible to wind up the estate and that as soon as conditions improved so that the real estate could be disposed of he would close up the estate. On May 2, 1934, American Surety Company, surety on the bond of the administrator, wrote the Probate Judge of Laurens County as follows: "We have been endeavoring to get this Administrator to close the estate for sometime but Mr. R. E. Babb, Attorney of Laurens, informs us that there has been no market for real estate and for that reason it has not been possible for Mr. Beacham to dispose of the realty and close the Estate." Some of the heirs were hard-pressed financially and needed what they were entitled to from the proceeds of the estate to live on. Promises were made by the administrator to the heirs from time to time that the estate would be closed up within the near future, and they were assured that he was disbursing the funds as fast as he received them. When one of the heirs notified him that she needed the money he offered to make her a loan. Throughout the years of the administration of this estate many promises were made by the administrator, but not kept, that he would settle the estate in the near future. All indebtedness of the estate had been paid on or before October 4, 1927, and there was no necessity to sell land in aid of assets, and in such event the administrator had nothing to do with the real property. His only duty was to administer the personal property. S. C.Civil Code 1932, Sections 8968, 8974, 8993, 9000, 9012; Glenn v. Worthy, 169 S. C. 263, 293, 168 S.E. 705. A statement was filed October 1937, but no annual returns were made and neither the heirs nor the attorneys could ascertain from the records the status of the estate before the statement was filed. Publication for citation for final accounting and discharge was complete November 7, 1927. The reasons given by the defendant for his failure to distribute the funds in hand or to invest the annual balances remaining in his hands for substantially ten years, in my opinion, are not sufficient to excuse him from the charge of neglect of duty. There was no reason or excuse to hold continually the large annual balances without distribution or investment.

The Supreme Court of South Carolina has announced several general principles upon the main question involved in this controversy: The object of administration is the distribution of the decedent's estate among those entitled to it according to law. Koon v. Munro, 11 S.C. 139. An administrator shall use such diligence in the preservation and improvement of the trust fund as a prudent man would do in relation to his own affairs. The corollaries to this proposition are: First, that he shall not make profit out of his trust; and second, that he shall be charged with no loss except for neglect of duty. All rules on the accountability of trustees must be made in subordination to these principles. Tucker v. Richards, 58 S.C. 22, 36 S.E. 3; Dixon v. Hunter's Distributees, 3 Hill, S.C., 204; Nicholson v. Whitlock, 57 S.C. 36, 35 S.E. 412; Parks v. McDaniel, 75 S.C. 7, 54 S.E. 801, 117 Am.St.Rep. 878;

Baker v. Lafitte, 4 Rich.Eq., S.C., 392; Turnipseed v. Sirrine, 60 S.C. 272, 38 S.E. 423. An administrator having balances in his hands from year to year and not investing these balances in productive property for the estate is chargeable with interest. Jenkins v. Fickling, 4 Desaus., S.C., 369; Benson v. Bruce, 4 Desaus., S.C., 463. And this is true whether he derives a profit from them or not. This rule is founded upon the presumption that he has either made a profit, or that as much is lost to the fund by his neglect of duty. The same good reasoning which made the rule has incorporated with it qualifications by which it is subjected to the variety of circumstances which could enter into the receipt or disbursement of funds; securing, on the one hand, the prompt and faithful discharge of the duty of the administrator, and, on the other, allowing him the exercise of a discretion in accommodating his management to the peculiar situation of the fund; prompting in the end the true interest of those entitled to it. Taveau v. Ball, 1 McCord Eq., S.C., 456; Pace v. Burton, 1 McCord Eq., S.C., 247; Turnipseed v. Sirrine, 60 S. C. 272, 38 S.E. 423. If an administrator retains funds of the estate in his hands without profit or interest, under an exigency demanding such a state of facts, then he should not be charged with interest. The onus, however, is upon him to prove facts warranting the holding of the funds idle to meet the demands and exigencies of the estate. It lies with him to show the existence of such circumstances as would justify a departure from the rule. Darrel v. Eden, 3 Desaus., S.C., 241, 4 Am.Dec. 613; Burnside v. Robertson, 28 S.C. 583, 6 S.E. 843; Duncan v. Dent, 5 Rich. Eq., S. C., 7; Ex Parte Glenn, 20 S.C. 64; Brown v. Vinyard, Bailey Eq., S.C., 460; Oswald v. Givens, Riley Eq., S.C., 38; Jenkins v. Fickling, 4 Desaus., S.C., 369; Benson v. Bruce, 4 Desaus., S.C., 463. Every man is presumed to know the law and if administrators are in fact ignorant of the law and act upon their blind judgments without consulting the attorneys allowed them at the expense of the estate, they must bear the consequences of their actions. Duncan v. Dent, 5 Rich.Eq., S.C., 7. It is a matter of judicial discretion with the court in the exercise of its equitable jurisdiction whether it will allow interest against the administrator. Nicholson v. Whitlock, 57 S.C. 36, 35 S.E. 412; Dixon v. Hunter's Distributees, 3 Hill, S.C., 204; Pettus v. Clawson, 4 Rich.Eq., S.C., 92; Tompkins v. Tompkins, 18 S.C. 1; Glenn v. Worthy, 169 S.C. 263, 168 S.E. 705; Beacham v. Ross, 187 S.C. 398, 197 S.E. 369. There is no inflexible rule of law that a balance against an administrator at the end of the year shall bear interest the year following. Each case must depend upon its facts and circumstances presented. The only inflexible rule is that the trustee shall not make a profit out of the balance in his hands, and that he shall not be charged with loss except for neglect of duty. Huguenin et al. v. Adams, et al., 110 S.C. 407, 96 S.E. 918; Dixon v. Hunter's Distributees, 3 Hill, S.C., 204; Tucker v. Richards, 58 S.C. 22, 36 S.E. 3.

■ The administrator has neglected his duty in paying to himself unearned commissions, which he has had the use of, and the profits from, since January, 1928, and March, 1930; in failing to make proper annual accountings; in refusing to distribute the large annual balances not held to meet obligations of the estate; in not heeding the requests and demands of the heirs for distribution of funds on hand and a settlement of the estate; in allowing the bank of which he was president, a director and a stockholder, to have the use of and the profit from these annual balances for many years without payment of interest for the use thereof; in making no attempt for many years to invest or deposit the annual balances in the savings account of the bank or otherwise; and in keeping in force a surety bond much larger than was necessary had the estate been administered according to law. The record does not disclose any legal excuse for his failure to distribute the funds to the heirs. It, on the other hand, shows a lack of observance of legal requirements and proper business methods in the handling of the estate. He would not heed the demands of the heirs to distribute and settle and he would not invest the funds. He did not use due diligence. He did not exercise ordinary prudence, and he has not shown any facts or circumstances warranting a departure from the general rule. There does not appear any circumstances which required the administrator to keep money in his hands. There were no debts, no demands which put the estate in hazard. Tested by the decided principles of law in this State,

he should be required to pay interest on the annual balances under the circumstances of this case at the rate of five per cent. per annum.

 Is the judgment in the case of Beacham, as Executor, et al., v. Ross, 187 S. C. 398, 197 S.E. 369, a bar to the claim of plaintiff for interest on the annual balances? The essential elements of res adjudicata are: (1) Identity of parties; (2) identity of subject matter; and (3) an adjudication in the former suit of the precise question sought to be raised in the second, and that the matter in dispute must have been necessarily involved and adjudicated in the former proceeding. Johnson-Crews Co. v. Folk, 118 S.C. 470, 111 S. E. 15. The parties are not identical and the judgment in the case relied upon grew out of the management of the estate of Mary Ross Chipley, deceased, by Beacham as executor. The instant case concerns the handling of the estate of W. G. Ross, deceased, by Beacham as administrator. While Mrs. Chipley and Mr. Ross were brother and sister, their estates are entirely separate and distinct. Under no circumstances could matters pertaining to the Ross estate have been included in, and adjudicated in, the suit in the Chipley estate. A judgment is not conclusive on any point or question which from the nature of the case, the form of action, or the character of the pleadings could not have been adjudicated in the suit in which it was rendered. Furthermore, as pointed out in the case relied upon by defendants, the allowance or disallowance of interest on annual balances not made productive, must be decided on the facts and circumstances of each particular case. The facts and circumstances of the case under consideration differ in two important particulars from case relied upon as a bar to the claim here. In that case the Supreme Court said [187 S.C. 398, 197 S.E. 373], "It is conceded that the disbursements by him to the beneficiaries were made with reasonable promptness", in the instant case it is *not* conceded that the disbursements were made by him to the beneficiaries with reasonable promptness; from the statement in evidence it appears they were not. In that case, while there was some request for distribution, there were not insistent and continuing demands made by the heirs for settlement and distribution, as was made by the heirs in the case under consideration.

Section 9012, South Carolina Code, 1932, requires administrators to render annually to the Judge of Probate, from whom they obtained letters of administration, a just and true account, upon oath, of the receipts and disbursements of the estate. It provides that if an administrator "should neglect to render such annual account, he shall not be entitled to any commissions for his trouble in the management of said estate; and shall moreover be liable to be sued for damages by any person or persons interested in such estate."

 It is admitted, and the record shows, the defendant administrator, in the more than thirteen years he has been handling this estate, has rendered but one accounting to the Judge of Probate. This was filed in October, 1937. Where returns are filed during certain years and omitted during other years, the commissions are allowed only for the years in which returns are filed. In re Norris' Estate, 153 S.C. 203, 150 S.E. 693. However, this will not prevent the defendant Beacham from receiving and retaining his commissions allowed by law upon the payment to the parties entitled thereto of any balance in his hands. Epperson v. Jackson, 83 S.C. 157, 65 S.E. 217. The administrator in this case is, therefore, entitled to commissions only on receipts and disbursements for the administrative year ending October 6, 1937, and on the final return hereafter to be ordered by this Court.

The statement of receipts and disbursements in evidence shows the administrator paid to himself, as commissions, on January 9, 1928, $1,000, and on March 6, 1930, $300. These commissions under the South Carolina law were not earned, and must be refunded to the estate by the administrator, with interest at the rate of six per cent. per annum from the 30th day of May, 1938, the date upon which he was informed that the commissions had not been legally earned.

 An administrator, in his accounting, will not be allowed credit for unnecessary bond premiums paid, but since the administrator in this case will be required to pay interest on the annual balances retained in his hands, he should not also be required to pay loss on excessive bond premiums caused by his refusal to distribute; he should not be charged with loss except in the amount of the difference

between the premiums required on the annual balances, and the premium actually paid and for the loss caused thereby he must account.

Let counsel submit an order in accordance with this opinion.